UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MPM SILICONES, LLC, *et al*.,[1]<br><br>Debtors. | Case No. 14-mc-0303-VB<br><br>Judge Vincent L. Briccetti |
| BOKF, NA, solely as Trustee for the MPM Escrow LLC and MPM Finance Escrow Corp. 8.875% First Priority Senior Secured Notes due 2020,<br><br>                          Appellant,<br><br>v.<br><br>MOMENTIVE PERFORMANCE MATERIALS INC., MOMENTIVE PERFORMANCE MATERIALS WORLDWIDE INC., MOMENTIVE PERFORMANCE MATERIALS USA INC., JUNIPER BOND HOLDINGS I LLC, JUNIPER BOND HOLDINGS II LLC, JUNIPER BOND HOLDINGS. III LLC, JUNIPER BOND HOLDINGS IV LLC, MOMENTIVE PERFORMANCE MATERIALS QUARTZ, INC., MPM SILICONES, LLC, MOMENTIVE PERFORMANCE MATERIALS SOUTH AMERICA INC., MOMENTIVE PERFORMANCE MATERIALS CHINA SPY INC.,<br><br>                          Appellees. | Case No. 14-mc-0303-VB |

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Juniper Bond Holdings I LLC (9631); (ii) Juniper Bond Holdings II LLC (9692); (iii) Juniper Bond Holdings III LLC (9765); (iv) Juniper Bond Holdings IV LLC (9836); (v) Momentive Performance Materials China SPV Inc. (8469); (vi) Momentive Performance Materials Holdings Inc. (8246); (vii) Momentive Performance Materials Inc. (8297); (viii) Momentive Performance Materials Quartz, Inc. (9929); (ix) Momentive Performance Materials South America Inc. (4895); (x) Momentive Performance Materials USA Inc. (8388); (xi) Momentive Performance Materials Worldwide Inc. (8357); and (xii) MPM Silicones, LLC (5481).  The Debtors' executive headquarters are located at 260 Hudson River Road, Waterford, NY 12188.

|  |  |  |
|---|---|---|
| WILMINGTON TRUST, N.A., solely as Trustee for the Momentive Performance Materials Inc. 10% Senior Secured Notes due 2020, | : : : : : : | Case No. 14-mc-0303-VB |
| Appellant, | : : : | |
| v. | : : | |
| MOMENTIVE PERFORMANCE MATERIALS INC., MOMENTIVE PERFORMANCE MATERIALS WORLDWIDE INC., MOMENTIVE PERFORMANCE MATERIALS USA INC., JUNIPER BOND HOLDINGS I LLC, JUNIPER BOND HOLDINGS II LLC, JUNIPER BOND HOLDINGS. III LLC, JUNIPER BOND HOLDINGS IV LLC, MOMENTIVE PERFORMANCE MATERIALS QUARTZ, INC., MPM SILICONES, LLC, MOMENTIVE PERFORMANCE MATERIALS SOUTH AMERICA INC., MOMENTIVE PERFORMANCE MATERIALS CHINA SPY INC., | : : : : : : : : : : : : : : : : : : | |
| Appellees. | : : | |

## JOINT OPPOSITION TO MOTION OF BOKF, NA, IN ITS CAPACITY AS FIRST LIEN TRUSTEE AND OF WILMINGTON TRUST, N.A. IN ITS CAPACITY AS 1.5 LIEN TRUSTEE, FOR CERTIFICATION OF DIRECT APPEAL PURSUANT TO 28 U.S.C. § 158(D)(2)

Matthew A. Feldman
Roger Netzer
James C. Dugan
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and
Debtors in Possession*

Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
Deborah J. Newman
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to Apollo Global Management, LLC and
certain of its affiliated funds*

Dennis F. Dunne
Michael L. Hirschfeld
Samuel A. Khalil
MILBANK, TWEED, HADLEY &
McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 822-5670

*Counsel for Ad Hoc Committee of Second
Lien Noteholders*

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

ARGUMENT ...................................................................................................................1

I.  THE BANKRUPTCY COURT'S ORDERS DO NOT RAISE ISSUES OF LAW
    AS TO WHICH THERE IS NO CONTROLLING DECISION OR QUESTIONS
    REQUIRING RESOLUTION OF CONFLICTING DECISIONS. ...................................2

    A.  The Cram Down Dispute is Controlled by Supreme Court and Second
        Circuit Precedent. ....................................................................................................2

    B.  The Make Whole Dispute and the Unmatured Interest Issue Do Not Merit
        Certification. .............................................................................................................7

II. THE CONFIRMATION ORDER DOES NOT INVOLVE MATTERS OF
    PUBLIC IMPORTANCE. ...............................................................................................11

III. DIRECT APPEAL WILL NOT MATERIALLY ADVANCE THE PROGRESS
     OF THESE BANKRUPTCY CASES. ...........................................................................14

CONCLUSION ..............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*In re 20 Bayard Views, LLC,*
    445 B.R. 83 (Bankr. E.D.N.Y. 2011) ..................................................................... 6

*Bank of Montreal v. Official Comm. of Unsecured Creditors (In re American HomePatient),*
    420 F.3d 559 (6th Cir. 2005) ................................................................................. 5

*In re Calpine Corp.,*
    365 B.R. 392 (Bankr. S.D.N.Y. 2007) ("*Calpine I*") ........................................... 10

*Carvel Investors UK Ltd. v. Giddens (In re Lehman Bros. Inc.*),
    No. 13-cv-5381 (DLC), 2013 WL 5272937 (S.D.N.Y. Sept. 18, 2013) ......................... 12

*In re Chemtura Corp.,*
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) .................................................................. 10

*In re DBSD N. Am., Inc.,*
    419 B.R. 179 (Bankr. S.D.N.Y. 2009) .................................................................... 6

*In re Gen. Motors Corp.,*
    409 B.R. 24 (Bankr. S.D.N.Y. 2009) ................................................................. 5, 12

*HSBC Bank USA, Nat'l Ass'n v. Calpine Corp.,*
    No. 07-3088, 2010 WL 3835200 (S.D.N.Y. Sept. 15, 2010) .............................. 8, 10, 11

*In re Johns-Manville Corp.,*
    449 B.R. 31 (Bankr. S.D.N.Y. 2011) .................................................................... 12

*In re Lilo Props., LLC,*
    No. 10-11303, 2011 Bankr. LEXIS 4407 (Bankr. D. Vt. Nov. 4, 2011) ...................... 3, 4

*In re Marfin Ready Mix Corp.,*
    220 B.R. 148 (Bankr. E.D.N.Y. 1998) ................................................................... 4

*Mark IV Indus., Inc. v. New Mexico Env't Dep't,*
    452 B.R. 385 (S.D.N.Y. 2011) ..................................................................... 12, 13, 15

*Mercury Capital Corp. v. Milford Conn. Assocs., L.P.,*
    354 B.R. 1 (D. Conn. 2006) ................................................................................... 6

*Northwestern Mut. Life Ins. Co. v. Uniondale Realty Assocs.,*
    11 Misc. 3d 980 (N.Y. Sup. Ct. 2006) .................................................................... 8

*In re Outdoor Sports Headquarters, Inc.*,
    161 B.R. 414 (Bankr. S.D. Ohio 1993) ........................................................................ 11

*In re Premier Entm't Biloxi LLC*,
    445 B.R. 582 (Bankr. S.D. Miss. 2010) ................................................................. 10, 11

*In re S. Side House, LLC*,
    451 B.R. 248 (Bankr. E.D.N.Y. 2011), *aff'd sub nom.*
    *U.S. Bank Nat'l Ass'n v. S. Side House, LLC*,
    No. 11-cv-4135 (ARR), 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012) ...................... 7, 8, 9

*Santiago-Monteverde v. Pereira (In re Santiago-Monteverde)*,
    No. 14-civ-1611 (PKC), 2014 WL 1301862 (S.D.N.Y. Mar. 25, 2014) ........................ 15

*In re School Specialty, Inc.*,
    No. 13-10125, 2013 WL 1838513 (Bankr. D. Del. Apr. 22, 2013) ................................ 11

*In re Solutia Inc.*,
    379 B.R. 473 (Bankr. S.D.N.Y. 2007) .................................................................. 7, 9, 10

*In re Texas Grand Prairie Hotel Realty*,
    710 F.3d 324,331 (5th Cir. 2013) .................................................................................. 7

*Till v. SCS Credit Corp.*,
    541 U.S. 465 (2004) ................................................................................................. 2, 3, 4

*U.S. Bank Trust Nat'l Ass'n v. American Airlines, Inc. (In re AMR Corp.)*,
    485 B.R. 279 (Bankr. S.D.N.Y. 2013) *aff'd* 730 F.3d 88 ......................................... 7, 8, 9

*In re Valenti*,
    105 F.3d 55 (2d Cir. 1997) ............................................................................................. 2

*Weber v. U.S. Trustee*,
    484 F.3d 154 (2d Cir. 2007) ............................................................................ 1, 6, 7, 15

## **STATUTES**

11 U.S.C. § 502(b)(2) ...................................................................................................... 10, 11

28 U.S.C. § 158(d)(2)(A)(i)-(iii) ............................................................................................. 2

MPM Silicones, LLC and certain of its affiliates (collectively, the "**Debtors**"), Apollo, and the Ad Hoc Second Lien Committee[1] submit this memorandum in opposition to the motion (the "**Motion**") of BOKF, NA as First Lien Trustee and Wilmington Trust, N.A., as 1.5 Lien Trustee (together, the "**Trustees**") for Certification of Direct Appeal to the Second Circuit pursuant to 28 U.S.C. section 158(d)(2) from the Bankruptcy Court's order confirming the Plan and entering judgment in the Debtors' favor on Adversary Proceedings Nos. 14-08227 and 14-08228.[2]

## ARGUMENT

The Second Circuit is "reluctant to accept cases for direct appeal when we think that percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision." *Weber v. U.S. Trustee*, 484 F.3d 154, 161 (2d Cir. 2007). Congress did not want the courts to "privilege speed over other goals; indeed, speed is not necessarily compatible with our ultimate objective-answering questions wisely and well. . . . Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law." *Id.* at 160. The Trustees' Motion provides no basis for this Court to certify their appeal to the Second Circuit.

---

[1]     All capitalized terms not defined herein shall have the meaning(s) ascribed to them in the Plan, Disclosure Statement, or in the Debtors' Omnibus Objection and Memorandum of Law in opposition to the Trustees' motions for a stay pending appeal and for an expedited appeal and briefing schedule (the "**Stay Opposition**"). [Dkt No. 8 in 14-mc-00298 and No. 9 in 14-mc-00303.] The Debtors refer to and respectfully incorporate the facts and procedural background set forth in the Stay Opposition.

[2]     The Trustees omit to acknowledge that they already have sought this relief from the Bankruptcy Court. At a hearing before Judge Drain on September 9th, they orally moved "for a direct certification of an appeal to the Second Circuit." September 9, 2014 Hr'g Tr. at 64:13-18. (A copy of the transcript is included as Exhibit 1 to the Declaration of James Dugan, dated September 18, 2014, filed herewith.) Judge Drain responded that they should move in writing, pointing out the need for a proper record because "the Second Circuit has generally said they like to have the intermediate review." *Id.* at 65:8-11. The Trustees responded that they would move the Bankruptcy Court in writing the next day. *Id.* at 65:2-3. Instead, they moved this Court by order to show cause for relief.

Section 158(d) of the United States Code Title 28 provides that an appeal may be certified for direct appeal to a court of appeals if "(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision . . . or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A)(i)-(iii).  As shown below, none of these factors are satisfied here.

I.    **THE BANKRUPTCY COURT'S ORDERS DO NOT RAISE ISSUES OF LAW AS TO WHICH THERE IS NO CONTROLLING DECISION OR QUESTIONS REQUIRING RESOLUTION OF CONFLICTING DECISIONS.**

    A.    **The Cram Down Dispute is Controlled by Supreme Court and Second Circuit Precedent.**

The Trustees seek direct certification of their appeal of the Bankruptcy Court's determination that the Debtors properly applied the "formula" approach required by the Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), and the Second Circuit in *In re Valenti*, 105 F.3d 55 (2d Cir. 1997), in order to calculate the appropriate interest rate at which to discount a stream of deferred payments to their present dollar value for purposes of "cramming down" a dissenting secured creditor in a bankruptcy case.  Judge Drain expressly concluded, however, after engaging in an extremely careful legal analysis, that *Till* and *Valenti* are controlling decisions on this issue.  The Trustees have not, and cannot, show that this conclusion was in error. [3]

---

[3]    Additionally, in order to grant the Trustees' motion on the ground that there is no controlling decision of this Circuit or the Supreme Court governing the Cram Down Dispute, the Court would first need to determine that Judge Drain's ruling that the issue is governed by *Till* and *Valenti* was erroneous.  The Trustees' request that the Court make such a ruling—on an incomplete record and without the opportunity to give plenary consideration to the issues that Judge Drain addressed so exhaustively—should be denied.

The Trustees argue that the *Till* and *Valenti* decisions do not govern because they involved chapter 13 rather than chapter 11 cases.  But the Supreme Court rejected this distinction In *Till*, finding that "Congress likely intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of the many Code provisions requiring a court to discount a stream of deferred payments back to their present dollar value." *Till,* 541 U.S. at 466.  The Supreme Court recognized the similarity between section 1325(a)(5)(B)(i)(II), the corresponding cramdown provision under chapter 13 of the Bankruptcy Code, and section 1129(b)(2)(A)(i)(II), the chapter 11 cramdown provision at issue here.  *See id.*  The Bankruptcy Court followed the Supreme Court's direction on this issue, finding that "there is no sufficient contrary basis to distinguish the chapter 13 and chapter 11 plan contexts in light of the similarity of the language of the [cramdown provisions] and the underlying present value concept that *Till* recognized should be applied uniformly throughout the Code," and that the Trustees had failed to

> counter *Till*'s guidance that courts should apply the same approach wherever a present value stream of payments is required to be discounted under the Code . . . .  The rights of secured lenders to consumers and secured lenders to corporations are not distinguished in *Till*, nor should they be.

Corrected and Modified Bench Ruling on Confirmation of Debtors' Joint Chapter [11] Plan of Reorganization for Momentive Performance Materials Inc. and its Affiliated Debtors, (the **Bench Ruling**") at 69:11-15; 78:19 – 79:1.[4]  Other courts in the Second Circuit have similarly held that *Till* and *Valenti* are governing precedents in chapter 11 cases.  *See In re Lilo Props., LLC*, No. 10-11303, 2011 Bankr. LEXIS 4407, at *6 (Bankr. D. Vt. Nov. 4, 2011) (applying the *Till*

---

[4]      A copy of the Bench Ruling is attached as Exhibit 12 to the Declaration of Roger Netzer dated September 16, 2014 submitted in support of the Stay Opposition.

formula in chapter 11 case without first conducting a market analysis); *In re Marfin Ready Mix Corp.*, 220 B.R. 148 (Bankr. E.D.N.Y. 1998) (applying *Valenti* in chapter 11 context).

The Trustees make much of a single footnote in *Till* that "when picking a cram down rate in a Chapter 11 case, it *might* make sense to ask what rate an efficient market would produce." *Till*, 541 U.S. at 476 n.14 (emphasis added).  As Judge Drain observed, however, this "footnote 14 is a very slim reed indeed on which to require a market-based approach in contrast to every other aspect of *Till*," and should not be read in a way contrary to *Till* and *Valenti*'s "first principles" that the formula approach outlined therein, "instead of . . . a market-based approach" should be used to calculate present value for purposes of cramdown.  Bench Ruling at 79:12-20.[5]

The Trustees also contend that *Valenti* is not a controlling Second Circuit decision because it predates *Till* and did not purport to apply in chapter 11 cases.  As Judge Drain observed, however, the Supreme Court cited *Valenti* favorably in the *Till* decision, and the two decisions mandate the same result.  Bench Ruling at 69:5-9 (citing *Till*, 541 U.S. at 480); *see also In re Lilo Props.*, 2011 Bankr. LEXIS at *6 (*citing Valenti* and applying the *Till* formula in chapter 11 case without a market analysis).  Additionally, even if the Trustees were correct that *Till* is not governing precedent on the Cram Down Issue (which they are not), in that circumstance *Valenti* would be the *only* governing precedent, and would compel the conclusion reached by Judge Drain.

---

[5]    A key element of the Trustees' argument is that *Till* is entitled to less deference, or need not be followed at all, because it is a plurality decision.  The Trustees fail to acknowledge, however, that Justice Thomas's concurrence argued for an interest rate methodology that would have been *less* favorable to parties being crammed down than the plurality's "formula" approach.  In concurring in the result, Justice Thomas made clear he did not agree with the minority's preferred approach—which is what the Trustees urged unsuccessfully below and now champion on appeal.  Among other things, the Trustees assert—incorrectly—that the cramdown interest rate must reflect "opportunity costs" (Mot. at 3), but this was rejected as an element of the calculation by both the plurality and Justice Thomas, as Judge Drain recognized in his ruling.  *See* Till at 541 U.S. at 479; *see* also August 21, 2014 Hr'g Tr. at 72:3-24.

The Trustees' reliance on the Sixth Circuit's decision in *Bank of Montreal v. Official Comm. of Unsecured Creditors (In re American HomePatient)*, 420 F.3d 559 (6th Cir. 2005), leads exactly to this conclusion, as Judge Drain pointed out.  Bench Ruling at 80:4-11.  In contrast with the Second Circuit, the Sixth Circuit historically, pre-*Till*, had applied a "coerced loan" approach (equivalent to the market-based methodology proposed by the Trustees) for calculating cramdown interest rates.  Because the Sixth Circuit concluded that *Till* was "not on all fours," the Bankruptcy Court determined that it "should continue to apply the coerced-loan approach unless there was no efficient market . . . . This is, of course, in contrast to this Court's duty to follow the guidance offered by *Valenti*, as well as *Till*."  Bench Ruling at 80:4-11.

Given that Judge Drain's ruling is supported by governing precedent issued by both the Supreme Court and the Second Circuit, the Trustees look outside the Second Circuit in an effort to argue that there are "conflicting decisions" warranting certification.  But this argument is barred by law and logic.  The Second Circuit cannot resolve conflicts with other Circuits, on a certified direct appeal or otherwise.  Thus, a split between the decisions of the Second Circuit and other Circuit courts – or between courts within and without of this Circuit – are not the type of "conflicting decisions," that warrant a direct appeal to the Second Circuit.  "[D]ecisions from outside the Circuit are not a basis for § 158(d)(2) review."  *In re Gen. Motors Corp.*, 409 B.R. 24, 29 (Bankr. S.D.N.Y. 2009). "While a circuit split might be an appropriate matter for consideration for the Supreme Court, in deciding whether or not it wishes to grant certiorari, it doesn't satisfy § 158(d)(2)."  *Id.* at 28.

The Trustees' contention that there is a "split" *within* the Second Circuit warranting the Second Circuit's direct review is also misplaced. The Trustees' contention that the Cram Down Issue is "unsettled,*"* and that certain bankruptcy courts have answered the cramdown question

differently than Judge Drain, militates *in favor of* district court review, not against it.  *See Weber*,
484 F.3d at 160.  "Courts of appeals benefit immensely from reviewing the efforts of the district
court to resolve such questions [of unsettled bankruptcy law].  Permitting direct appeal too
readily might impede the development of a coherent body of bankruptcy case-law."  *Id.*

In any event, resolution of the Cram Down Issue does not require "resolution" of
conflicting decisions.  All three of the cases cited by the Trustees in their efforts to establish a
"conflict" fail to analyze *Valenti* at all.  While the first case (*Mercury Capital Corp. v. Milford
Conn. Assocs., L.P.*, 354 B.R. 1 (D. Conn. 2006)) recognizes the existence of the *Till* formula,
the court instead relied on cases outside of the Second Circuit to nevertheless conclude that a
market rate of interest should be applied (while failing to even cite to *Valenti*).  The second case
(*In re 20 Bayard Views, LLC*, 445 B.R. 83 (Bankr. E.D.N.Y. 2011)) also relies on precedents
from outside the Second Circuit, and cites to *Valenti* only in passing.  The only other purported
"conflicting decision" cited by the Trustees (*In re DBSD N. Am., Inc.*, 419 B.R. 179, 209 (Bankr.
S.D.N.Y. 2009)), also failed to analyze *Valenti*.  *DBSD* is also distinguishable as it did not
involve an analysis of the cramdown provision at issue here (section 1129(b)(2)(A)(i) of the
Bankruptcy Code), but instead examined the "indubitable equivalent" provision of section
1129(b)(2)(A)(iii), which, unlike section 1129(b)(2)(A)(i), does not explicitly require a
dissenting creditor to retain its liens on the prepetition collateral or receive the present value of
its allowed claims through a stream of deferred payments.  *See* August 21, 2014 Hr'g Tr. at
236:20-25; 237:1-13 (noting that unlike *Till*, *DBSD* was "an indubitable equivalent case").[6]

Thus, this case does not present the type of "uncertainty in the bankruptcy courts (either
due to the absence of a controlling legal decision or because conflicting decisions have created

---

[6]     The relevant transcript reference is included as Exhibit 2 to the Declaration of James Dugan, dated
September 18, 2014, filed herewith.

confusion)" that might be ameliorated by the Second Circuit accelerating this appeal.  *Weber*, 484 F.3d at 161.  Moreover, even if the three cases cited by the Trustees (which were issued over a period of ten years) did reflect a disagreement among the bankruptcy courts of this Circuit (which they do not), the Trustees have failed to demonstrate why they should operate to deprive the Second Circuit of the intermediate review that it generally prefers.[7]

### B. The Make Whole Dispute and the Unmatured Interest Issue Do Not Merit Certification.

The Trustees' argument that there is a need for immediate appellate review of the make whole issue is also meritless.  Indeed, as the Bankruptcy Court correctly and expressly found, "[i]t is *well-settled law* . . . that, unless the parties have clearly and specifically provided for payment of a make-whole . . . notwithstanding the acceleration or advancement of the original maturity date of the notes, a make-whole will not be owed."  Bench Ruling at 38:13-23 (emphasis added) (citing *In re S. Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011), *aff'd sub nom. U.S. Bank Nat'l Ass'n v. S. Side House*, *LLC*, No. 11-cv-4135 (ARR), 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012)).   As the Bankruptcy Court noted, the law in this Circuit is clear that the automatic acceleration of debt upon a borrower's bankruptcy filing does not constitute a prepayment of debt entitling the lenders to a make whole premium.  *See e.g.*, *In re AMR Corp.*, 730 F.3d 88, 103 (2d Cir. 2013) (holding that "American's bankruptcy petition triggered a default" which "changed the date of maturity from some point in the future . . . to an earlier date" and, consequently, "American's attempt to repay the debt . . . was not a voluntary prepayment") (internal quotations omitted); *In re Solutia Inc.*, 379 B.R. 473, 488 (Bankr.

---

[7]     The Trustees argue that application of *Till* in a Chapter 11 cramdown will affect "[l]enders' willingness to lend, and the price at which they are willing to lend."  Mot. at 8.  But, as the Fifth Circuit recognized, in a decision cited by the Trustees, since *Till* was decided in 2004, the "vast majority of bankruptcy courts" have applied *Till* in the context of Chapter 11 cramdown.  *See In re Texas Grand Prairie Hotel Realty*, 710 F.3d 324, 331 (5th Cir. 2013).  Despite this application of *Till* by "the vast majority of bankruptcy courts," secured lending to corporate borrowers remains strong and affordable.

S.D.N.Y. 2007) (finding that where an indenture provides for the automatic acceleration of debt upon the borrower's bankruptcy filing, the repayment of such debt pursuant to a plan of reorganization did not constitute a "*prepayment*" of such debt entitling lenders to a premium in respect of lost interest absent sufficient language in the applicable indenture) (emphasis added).

Moreover, although parties may contract around this well-settled rule, the law in this Circuit is also clear that in order to do so, they must use language that is clear and unambiguous, and goes beyond what was used here.  *See U.S. Bank Trust Nat'l Ass'n v. American Airlines, Inc. (In re AMR Corp.*), 485 B.R. 279, 300 n.19 (Bankr. S.D.N.Y. 2013) ("[I]n the event of an acceleration of debt, *the contractual language should provide explicitly for a premium* if one is to be recoverable.  The Indentures here did not.") (emphasis added), *aff'd*, 730 F.3d 88; *In re S. Side House LLC*, 451 B.R. at 268 (Bankr. E.D.N.Y. 2011) ("[A] lender is not entitled to prepayment consideration after a default *unless the parties' agreement expressly requires it*.") (emphasis added); *HSBC Bank USA, Nat'l Ass'n. v. Calpine Corp.*, No. 07-3088, 2010 WL 3835200, at *5 (S.D.N.Y. Sept 15, 2010) ("Calpine II"); *Northwestern Mut. Life Ins. Co. v. Uniondale Realty Assocs.*, 11 Misc. 3d 980, 985 (N.Y. Sup. Ct. 2006).

The Trustees do not argue that the Bankruptcy Court erred in holding that the law governing the make whole issue was "well-settled."  Rather, they cite to the Second Circuit's decision in *In re AMR Corp.*– which is completely consistent with Bankruptcy Court's decision below – and argue that because the indenture there provided explicitly that a make whole premium would not be owed in the event of automatic debt acceleration, the question of whether a make whole premium is owed when the indenture at issue does not expressly so provide is unsettled in this Circuit.  Courts in numerous jurisdictions—including the Second Circuit—have consistently held that to trigger payment of a premium upon the automatic acceleration of debt,

the applicable acceleration provision must provide for the payment of such premium in sufficiently explicit terms. *See e.g., In re AMR Corp.*, 485 B.R. at 300 n.19 (stating that in order for a premium to be recoverable upon automatic acceleration, the contract at issue should expressly provide for such a premium and citing *In re Anchor Resolution*, 221 B.R. 330 (Bankr D. Del 1998)—a case often cited as a benchmark of sufficiently explicit language—as an example of a provision entitling holders to a premium upon automatic acceleration) (emphasis added), *aff'd*, 730 F.3d at 88; *In re S. Side House*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011) ("As a general rule, a lender is not entitled to prepayment consideration after a default unless the parties' agreement expressly requires it."); *In re Solutia*, 379 B.R. at 488 (declining to award a claim for loss of an expected interest stream absent explicit language in the indenture so entitling the lender).

The distinction between the contractual language at issue in *AMR* and the language underlying the instant dispute does not justify a direct appeal to the Second Circuit where, as here, the question of whether a make whole premium must be paid depends on the specific language of the contracts at issue, as the Trustees themselves concede. *See Carvel Investors UK Ltd. v. Giddens (In re Lehman Bros. Inc.)*, No. 13-cv-5381 (DLC), 2013 WL5272937 at *4 (S.D.N.Y. Sept. 18, 2013) (holding that "inquiries heavily dependent on the particular facts of this case, which must be examined in light of the [Second Circuit precedent] are thus inappropriate for direct appeal."). Indeed, if the Trustees' argument were correct, practically every breach of contract case decided by a bankruptcy court should be subject to direct appeal to the Second Circuit, since the outcome of each such case would depend upon the specific language of the contract and, thus, not be subject to controlling Second Circuit precedent. This cannot be the law.

9

The Trustees are also incorrect that *In re Calpine Corp*, 365 B.R. 392 (Bankr. S.D.N.Y. 2007), and *In re Chemtura Corp.*, 439 B.R. 561 (Bankr. S.D.N.Y. 2010) present conflicting decisions from within the Second Circuit with respect to the Make Whole Dispute.[8]  In *In re Chemtura Corp.*, the bankruptcy court specifically found that a settlement allowing the payment of less than 50% of an alleged make whole premium was above the lowest rung of reasonableness and therefore satisfied the requirements of Bankruptcy Rule 9019.  In making such a finding, the court relied on the fact that the *Chemtura* debtors were solvent, and thus section 502(b)(2) of the Bankruptcy Code, which provides for the disallowance of unmatured interest, may not apply in solvent debtor cases.  *In re Chemtura Corp.*, 439 B.R. at 604-606.  Clearly, this ruling does not apply here, as the Debtors are unquestionably insolvent.[9]

The Trustees' reliance on *In re Calpine Corp. ("Calpine I")* is even weaker.  While the bankruptcy court in *Calpine I* found that lenders could recover damages notwithstanding that they were not explicitly provided for in the indenture, this decision was subsequently criticized,[10] and was ultimately overruled by the district court, which found that the "Trustee's claims are specifically proscribed by § 502(b)(2) and § 506(b) of the Bankruptcy Code."  *Calpine II*, 2010 WL 3835200, at *7.  The district court further held that without a specific provision providing for damages after acceleration, "no damages are recoverable after acceleration."  *Id.* at *4.  This

---

[8]     Contrary to the Trustees' assertion (Mot. at 7), the Bankruptcy Court did *not* hold that the Trustees have a claim for breach of the no-call or rescission provisions of the applicable indentures.  In fact, the Bankruptcy Court expressly found that these indentures do not contain no-call provisions, so such provisions could not possibly have been breached.  *See* Bench Ruling at 45:25-46:3.

[9]     The Trustees also cite *In re Premier Entm't Biloxi*, 445 B.R. 582, 590 (Bankr. S.D. Miss. 2010), but that decision, which is from outside the Second Circuit, is also easily distinguishable because the debtor there was solvent.  *Id.* at 636-637.

[10]     *In re Solutia Inc.*, 379 B.R. 473, 485 (Bankr. S.D.N.Y. 2007) ("This Court respectfully disagrees with *Calpine [I]* because it reads into agreements between sophisticated parties provisions that are not there.").

is exactly the same reasoning applied by the Bankruptcy Court here.   Any conflict with *Calpine I* has been resolved by *Calpine II*, in line with the Bankruptcy Court's decision below.[11]

The Trustees are also incorrect that there is a need for immediate appellate review regarding whether the Trustees may recover damages for a purported breach of the common law rule of perfect tender or the First and 1.5 Lien Indentures' no-call provisions.  If any such damages exist (and they do not), they consist of the present value of future interest payments under the Notes, and thus, by definition, constitute claims for "unmatured interest" that are expressly disallowed by section 502(b) of the Bankruptcy Code.  11 U.S.C. § 502(b)(2); *see Calpine II*, 2010 WL 3835200, at *5 (where creditor not entitled to any contractual acceleration premium, claim disallowed as "unmatured interest").  The so-called conflicting precedent cited by the Trustees (none of which are from this Circuit) do not suggest a different result, as each of those decisions construes liquidated damages provisions that are not included in the First and 1.5 Lien Indentures at issue here.  *See In re School Specialty, Inc.*, No. 13-10125, 2013 WL 1838513 (Bankr. D. Del. Apr. 22, 2013); *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993) ("Prepayment amounts . . . do not constitute unmatured interest because they fully mature *pursuant to the provisions of the contract*.") (emphasis added).  Thus, to the extent that the holdings of these cases differ from the Bankruptcy Court's, the differences result from the contractual language at issue, rather than a conflict in the applicable legal principles.

## II.    THE CONFIRMATION ORDER DOES NOT INVOLVE MATTERS OF PUBLIC IMPORTANCE.

The Trustees also argue that certification of a direct appeal to the Second Circuit is appropriate under Section 158(d)(2)(A)(i) because the Cram Down Dispute and Make Whole

---

[11]    The Trustees also cite *In re Premier Entertainment Biloxi*, 445 B.R. 582, 590 (Bankr. S.D. Miss. 2010), but that decision, which is from outside the Second Circuit, is also easily distinguishable because the debtor there was solvent. *Id.* at 636-637.

Dispute are matters of public importance.  In order to be of "public importance," an appellate issue must "transcend the litigants" and "advance the development of the law to an unusual degree, or impact the public at large."  *Mark IV Indus., Inc. v. New Mexico Env't Dep't*, 452 B.R. 385, 390, 389 (S.D.N.Y. 2011); *In re Johns-Manville Corp.*, 449 B.R. 31, 33 (Bankr. S.D.N.Y. 2011) (denying certification for a "private contract dispute that is not the type of 'matter of public importance' that is within the meaning of section 158(d)(2)(A)(i).").  Courts in this Circuit have certified issues for direct appeal to the Second Circuit on this basis sparingly.  For example, although the court in *In re Gen. Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009), conceded that a proposed section 363 sale would have an impact on the public and although the public had a general interest in the restructuring of the company because the U.S. Treasury had "put billions of dollars at risk to keep GM alive," it declined to certify an appeal of the sale order because the question of law at issue was "ultimately a matter of statutory and common law analysis-as contrasted, for example, to constitutional issues."  *Id.*  And in *Carvel Investors UK Ltd. v. Giddens (In re Lehman Brothers, Inc.)*, where the appellants argued that the bankruptcy court's ruling that they were not entitled to SIPA customer status would upend the securities market, the court nonetheless declined to certify an appeal because the appellants had not met their burden to "explain how the resolution of these issues through certification of a direct appeal would . . . impact the public at large."  No. 13-cv-5381 (DLC), 2013 WL 5272937, at *5 (Bankr. S.D.N.Y. Sept. 18, 2013) (quotation marks omitted).  Similarly, in *Mark IV Industries, Inc. v. New Mexico Environment Department*, the court declined to certify an appeal because appellant failed to "explain how the resolution of the issues on appeal would advance the development of the law to an unusual degree, or impact the public at large."  452 B.R. 385, 390 (S.D.N.Y. 2011).

Here, the Trustees offer nothing more than speculation that the Bankruptcy Court's decision could affect lending to distressed companies.[12]  As the Bankruptcy Court noted, the Trustees have offered absolutely zero evidence to support their doomsday scenarios.  *See* Rev. Stay Hr'g Tr. at 132:24-133:3; 133:24-25 ("You're basically saying that people who will be lending to corporations will actually stop because of my ruling . . . which I find hard to believe. . . . Well it's just people talking.  There's no evidence of this.").  In truth, the only parties that are truly affected by the appellate issues raised by the Trustees are the First Lien and 1.5 Lien Noteholders.[13]  Under governing Second Circuit law, this does not even approximate the high bar that the Trustees would need to meet in order to show that these are issues of public importance. *See Mark IV Indus., Inc.*, 452 B.R. at 389 ("An appeal that impacts only the parties, and not the public at large, is not a matter of public importance.") (citation omitted).

---

[12]     The Trustees cite the posts of two internet bloggers as their basis to assert that the Bankruptcy Court's decision of the make whole issue "has generated a firestorm in the lending community" and will have "broad implications" for the lending markets." Mot. at 9.  The fact is that the "harm" the Trustees invoke—inability to collect make-whole premiums if the maturity date is accelerated by a bankruptcy filing—can be avoided entirely by appropriate drafting of loan documents.  Indeed, that is exactly what the quoted text the Trustees selected from one blogger says:  "public investors will begin demanding stricter contract language." *Id.* at 9 n.3.  Further, the Trustees inaccurately claim that the cited article criticizes Judge Drain's decision.  Instead, the article merely notes the decision has "put [creditors] on notice about the language they'll need to negotiate into indentures to collect make-wholes in the future."  Andrew Scurria, *Momentive Make-Whole Ruling Sends Investors Scrambling*, Law360 (Sept. 5, 2014), http://www.law360.com/articles/574021/momentive-make-whole-ruling-sends-investors-scrambling.

[13]     The Trustees fail to mention in the Motion that, following the issuance of the Bench Ruling, certain First and 1.5 Lien Noteholders (through counsel also representing the First and 1.5 Lien Trustees, respectively) prosecuted motions pursuant to Bankruptcy Rule 3018 to change their votes on the Plan from "reject" to "accept" such that the claims of First and 1.5 Lien Noteholders would be satisfied in cash pursuant to the Plan in lieu of Replacement Notes, without any make-whole premium.  *See* September 9, 2014 Hr'g Tr. at 19-25 (Dugan Decl. Ex. 1.)  The relevant transcript reference is included as Exhibit 2 to the Declaration of James Dugan, dated September 18, 2014, filed herewith.)  The Trustees stated that such relief would obviate the need for any further litigation, including appellate litigation. *Id.* at 25:3-20.  The practical effect of such relief, however, would be to render the Bench Ruling subject to no appellate review and is thus not at all consistent with the stated need for such review that the Trustees now advance to avoid alleged deleterious effects on capital markets as a whole.

## III.   DIRECT APPEAL WILL NOT MATERIALLY ADVANCE THE PROGRESS OF THESE BANKRUPTCY CASES.

Finally, the Trustees argue that this Court should certify a direct appeal to the Second Circuit because doing so will "materially advance the progress of the case."  In an effort to support this contention, the Trustees argue that a direct appeal "will obviate the need for multi-level appellate review, and the ancillary time and expenditure of resources," "will expedite resolution of the disputes relating to the terms of the Debtors' reorganization, thereby providing finality and certainty for all [affected] parties," and will minimize the risk of the Trustees' appeals becoming equitably moot "because it will minimize the time necessary to complete the appellate process . . . which will in turn expedite the administration of many other chapter 11 cases within this Circuit." Mot. at 13-14.[14]  If these types of benefits warranted direct appeal to the Second Circuit, however, then certification would be appropriate in almost every appeal of a bankruptcy court's confirmation order.  Clearly, this is not the law.

As this court held in *In re Lehman Bros. Inc.*, 2013 WL 5272937, at *5, "if the mere expectation of advancement to a circuit court was sufficient to establish material advancement, Section 158(d)(2)(A) would effectively eliminate the district court from the bankruptcy review process altogether."  And the Second Circuit has held that the "multi-level appellate review" that the Trustees seek to avoid here serves an important function that should not to be disregarded lightly:

> [A]lthough Congress emphasized the importance of our
> expeditious resolution of bankruptcy cases, it did not wish us to
> privilege speed over other goals; indeed, speed is not necessarily
> compatible with our ultimate objective — answering questions

---

[14]   This Court should be aware that counsel for the First Lien Trustee pointedly indicated to the Bankruptcy Court that the Trustees sought a stay of unlimited duration, because it was their intention to exhaust every appellate avenue, all the way to the Supreme Court. *See* Rev. Stay Hr'g Tr. at 129:4-16 ("This is an issue that warrants getting definitive law at the circuit level and  frankly, maybe at the U.S. Supreme Court level . . . ).

> wisely and well. In many cases involving unsettled areas of
> bankruptcy law, review by the district court would be most helpful.
> Courts of appeals benefit immensely from reviewing the efforts of
> the district court to resolve such questions. Permitting direct appeal
> too readily might impede the development of a coherent body of
> bankruptcy case-law.

*Weber*, 484 F.3d at 160.  Indeed, several courts have held that any need for speed in the appellate process is outweighed by the benefits of district court review:  "[a]ny cost to speed in permitting district court review will likely be outweighed by the benefit of such review on casting light on the issues and facilitating a wise and well-informed decision."  *Mark IV Indus.,* 452 B.R. at 390-91; *In re Santiago-Monteverde v. Pereira (In re Santiago-Monteverde),* No. 14-civ-1611 (PKC), 2014 WL 1301862, at *2 (S.D.N.Y. Mar. 25, 2014) ("[E]fficiency alone is not a proper reason for certification.").  Additionally, "since district courts tend to resolve bankruptcy appeals faster than the courts of appeals . . . the cost in speed of permitting district court review will likely be small."  *Mark IV Indus.*, 452 B.R. at 389.

These cases are essentially over.  The Plan has been confirmed and will become effective in the near future.  The cases do not present the type of circumstances in which certification of a direct appeal to the Second Circuit will materially advance the progress of the cases.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the direct certification motion and grant such other and further relief as may be just and proper.

Dated: New York, New York
September 18, 2014

15

**WILLKIE FARR & GALLAGHER LLP**
*Counsel for the Debtors and*
*Debtors in Possession*

By:  /s/ James C. Dugan
Matthew A. Feldman
Roger Netzer
James C. Dugan
Stephen C. Mouritsen

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

**AKIN GUMP STRAUSS HAUER & FELD LLP**
*Counsel to Apollo Global Management, LLC and*
*certain of its affiliated funds*

By:  /s/ Philip C. Dublin
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
Deborah J. Newman

One Bryant Park
New York, NY  10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

**MILBANK, TWEED, HADLEY & McCLOY LLP**
*Counsel for Ad Hoc Committee of Second Lien*
*Noteholders*

By:  /s/ Dennis F. Dunne
Dennis F. Dunne
Michael L. Hirschfeld
Samuel A. Khalil
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 822-5670